UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE


<u>United States of America</u>

     v.                                    Civil No. 12-cv-387-JL

<u>Jeffrey Sullender, individually
and as trustee of Seaside
Management Trust; and Reserve
Investments</u>


                       **REPORT AND RECOMMENDATION**


     The United States of America ("the United States" or "the government") has sued to reduce to judgment unpaid federal income-tax assessments against Jeffrey Sullender (Count I), and to enforce federal tax liens against two properties owned by Seaside Management Trust (Count II).  Defendants have defaulted.  Before me for a report and recommendation is the government's motion for default judgment.  For the reasons that follow, I recommend that the government's motion be granted in part.

                           **The Legal Standard**

     On March 28, 2013, default was entered against defendants by the clerk of the court.  See doc. no. 12.  Thus, they are "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability."

S.E.C. v. New Futures Trading Int'l Corp., No. 11-cv-532-JL, 2012 WL 1378558, at *1 (D.N.H. Apr. 20, 2012) (quoting Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir.2002)).  But, while "a defaulting party admits the factual basis of the claims asserted against it, the defaulting party does not admit the legal sufficiency of those claims."  10 James Wm. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2011) (citing Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992)).  Accordingly, "[t]he claimant must state a legally valid claim for relief," 10 Moore's, supra, and "[a] court may grant judgment by default only for relief that may lawfully be granted on the well-pleaded facts alleged by the claimant," id. (emphasis added).

## Discussion

As noted, defendants have conceded the truth of the factual allegations in the complaint.  With regard to the claim stated in Count I, defendants have conceded that: (1) Jeffrey Sullender ("Sullender") did not file any federal income-tax returns for the years 2000 through 2005; (2) on December 7, 2006, assessments were made against Sullender by a delegate of the Secretary of the Treasury for unpaid federal income taxes,

2

penalties, and interest; and (3) as of March 2, 2012, the balance due on those assessments was $2,352,004.18.

With regard to the government's request, in Count II, for enforcement of tax liens on 39 Simon Street, Unit 3A, Nashua, New Hampshire ("the Nashua property"), defendants have conceded that: (1) Sullender acquired the Nashua property in February of 1991; (2) in January of 1995, he conveyed it to Aldebaran Assets Associates ("Aldebaran") for no consideration; (3) in November of 2002, Aldebaran conveyed the Nashua property to Seaside Management Trust ("Seaside") for twenty-one United States silver dollars; and (4) "Sullender purports to be the Executive Trustee of the Seaside Management Trust," Am. Compl. (doc. no. 37) ¶ 38. In January of 2007,

> a delegate of the Secretary of the Treasury filed Notices of Federal Tax Liens in accordance with 26 U.S.C. § 6323(f) for the unpaid 2000, 2001, 2002, 2003, 2004, and 2005 federal income tax liabilities of Sullender, in the name of "Jeffrey S Sullender," and listing the [Nashua p]roperty, with the Registry of Deeds for Hillsborough County.

Am. Compl. (doc. no. 37) ¶ 18.

With regard to the government's request, in Count II, for enforcement of tax liens on 1 Nevins Road, Hollis, New Hampshire ("the Hollis property"), defendants have conceded that: (1) Lisa Pollard ("Lisa") acquired the Hollis property in June of 2004

3

from John Baltz;[1] (2) shortly thereafter, Lisa married Sullender; and (3) in March of 2005, Lisa conveyed the Hollis property to Seaside for "2 ounces of gold in coin," Am. Compl. (doc. no. 37) ¶ 22.[2]  No later than July of 2007, a delegate of the Secretary of the Treasury filed Notices of Federal Tax liens, listing the Hollis property, in the Hillsborough County Registry of Deeds.

Based upon the foregoing, the United States seeks the following relief in its motion for default judgment: (a) a judgment against Sullender "in the amount of $2,379,799.81, plus statutory additions from September 3, 2013, including interest pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. §1961(c), until the judgment is satisfied," Mot. Default J. (doc. no. 40-1) 11; (b) a judgment that its tax liens against the Nashua and Hollis properties are valid; (c) a judgment that it may enforce those liens through a judicial sale; and (d) its costs of litigation.

---

[1] Defendants have also conceded that "Lisa Pollard only paid 28 percent of the purchase price, and Sullender paid 72 percent of the purchase price for the [Hollis p]roperty, despite the deed being put in Lisa's name."  Am. Compl. (doc. no. 37) ¶ 21.

[2] In addition, defendants have conceded that in May of 2007, Seaside conveyed the Hollis property for no consideration to Sullender's sister, Staci Barba, but Barba has disclaimed any interest in the property, see doc. no. 24, and, for that reason, was voluntarily dismissed as a defendant in this case, see doc. no. 31.

A. Count I

Count I is the government's request for a money judgment against Sullender. "The district courts of the United States at the instance of the United States shall have such jurisdiction . . . to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). As Judge Conner has explained:

> If a taxpayer is liable to the IRS, the Government may proceed in district court to obtain a judgment for the amount assessed against the taxpayer. 26 U.S.C. § 7402(a). "It is well established that the IRS's tax calculations (including calculations of interest and penalties) are presumptively valid and create a prima facie case of liability, such that the Government is 'entitled to have the assessment reduced to judgment unless the taxpayer overcomes the presumption by the IRS that the assessment is correct.'" United States v. Chrein, 368 F. Supp. 2d 278, 282 (S.D.N.Y. 2005) (citing Chariot Plastics, Inc. v. United States, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998)). The burden is on the defendant to prove the invalidity of the tax assessment. Pizzarello v. United States, 408 F.2d 579, 583 (2d Cir. 1969); Chrein, 368 F. Supp. 2d at 282.

United States v. Sweeny, 418 F. Supp. 2d 492, 496 (S.D.N.Y. 2006); see also United States v. LaBombard, 107 F. Supp. 2d 57, 58 (D. Mass. 2000). Based upon the foregoing, and defendants' default, the United States is entitled to have the assessments against Sullender reduced to judgment on the terms stated in its motion for default judgment.

B. Count II

Count II is the government's request for enforcement of its liens against the Nashua property and the Hollis property. That request arises under the following provision of the Internal Revenue Code:

> In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof . . . the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

26 U.S.C. § 7403(a). As for how to determine whether a taxpayer has any right, title, or interest in any property, it is well established that "federal law 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law,'" United States v. Rye, 550 F.2d 682, 684 (1st Cir. 1977) (quoting United States v. Bess, 357 U.S. 51, 55 (1958); citing Aquilino v. United States, 363 U.S. 509, 513 (1960)); see also United States v. Hershberger, 475 F.2d 677, 681-82 (10th Cir. 1973); United States v. Kocher, 468 F.2d 503, 506-07 (2d Cir. 1972). I consider in turn each of the two properties at issue.

### 1. Liens on the Nashua Property

The obvious problem with enforcing liens on the Nashua property to satisfy Sullender's tax liability is that he was not <u>that</u> property's owner of record when a lien against <u>his</u> property arose. Judge Barbadoro has explained the circumstances under which a federal tax lien arises:

> A federal tax lien arises against a taxpayer's property when three conditions are satisfied. First, the government must make an assessment of a taxpayer's tax liability. <u>See</u> 26 U.S.C.A. § 6203 (West 1989). Second, the government must issue a notice of the assessment and a demand for payment within 60 days after the assessment is made. <u>See</u> 26 U.S.C.A. § 6303(a) (West 1989). Third, the taxpayer must neglect or refuse to pay the full amount demanded. <u>See</u> 26 U.S.C.A. § 6321 (West 1989).

<u>United States v. Tempelman</u>, 111 F. Supp. 2d 85, 90 (D.N.H. 2000) (footnotes omitted); <u>see also</u> <u>United States v. Marciello</u>, Civil No. 09-12089-JLT, 2013 WL 1282385, at *4 (D. Mass. Jan. 28, 2013) ("The lien typically arises 'at the time the assessment is made . . .'") (quoting 26 U.S.C. § 6322).

Sullender had not been the Nashua property's owner of record since January of 1995, when he conveyed it to Aldebaran (which in turn, conveyed it to Seaside in November of 2002). The United States recognizes that issue, and addresses it in the following way:

> The purported transfers were made with little or no consideration, and nothing was exchanged.
>
> The purported transfers of Sullender's interest in the [Nashua p]roperty were made with the intent of hindering, defeating, obstructing, or defrauding Sullender's creditors, including, without limitation, the United States of America to which he knew he was indebted for unpaid federal income taxes at the time of the transfers.[3]
>
> The transfers were made to hide Sullender's assets by recording title in a fictitious entity that he controlled, namely Seaside Management, so he could understate his assets, and avoid the reach of creditors.
>
> . . . .
>
> [Seaside] holds record title to the [Nashua p]roperty as the mere nominee of Sullender, the true and equitable owner of the Property.
>
> In the alternative, [Seaside] holds record title to the [Nashua p]roperty as the alter-ego of Sullender, the true and equitable owner of the Property.
>
> . . . .
>
> In the alternative, the transfer of the [Nashua property] to [Seaside was] voluntary, [was] initiated by Sullender with the actual intent to hinder, defeat, obstruct, or defraud creditors of Sullender, both present and future, including the United States, [was] made without receiving a reasonably equivalent value

---

[3] According to the complaint, Sullender conveyed the Nashua property to Aldebaran in 1995, five years before the earliest year for which he is alleged to have filed no federal income-tax return, and more than ten years before the date of the first assessment against him. Thus, it is difficult to see how "he knew he was indebted for unpaid federal income taxes" at the time he conveyed the Nashua property to Aldebaran.

>   in exchange for the transfer, at a time when Sullender
>   believed or reasonably should have believed that he
>   would incur, debts beyond his ability to pay as they
>   became due to creditors, including the United States,
>   and [was] therefore [a] fraudulent conveyance[ ].

Am. Compl. (doc. no. 37) ¶¶ 15-17, 41-42, 44.  Based upon the facts it has alleged, the United States has not stated a legally valid claim for enforcement of its liens on the Nashua property.

### a. The Government's Fraudulent Conveyance Theory

As the court has already indicated, "[f]raudulent transfers are controlled by state law." United States v. Davenport, 412 F. Supp. 2d 1201, 1208 (W.D. Okla. 2005) (citing Comm'r v. Stern, 357 U.S. 39, 45 (1958); Am. Bonding Co. of Balt. v. Hord, 98 F.2d 350, 352 (8th Cir. 1938)); see also United States v. Whelan, 554 F. Supp. 2d 621, 626 (S.D. W. Va. 2008).  "If a conveyance is void under state law, the federal tax lien attaches to the subject property by operation of 26 U.S.C. § 6321 and the lien may be foreclosed by a sale of the property in accordance with § 7403 of the [Internal Revenue] Code." Davenport, 412 F. Supp. 2d at 1208 (citing United States v. Ressler, 433 F. Supp. 459, 463-65 (S.D. Fla. 1977)).

The state law in this case is New Hampshire's enactment of the Uniform Fraudulent Transfer Act ("UFTA"), N.H. Rev. Stat.

9

Ann. ("RSA") ch. 545-A.  The United States relies upon the following provision of the UFTA:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a) With actual intent to hinder, delay, or defraud any creditor of the debtor;

RSA 545-A:4, I.  The UFTA further provides:

> In determining actual intent under subparagraph I(a), consideration may be given, among other factors, to whether:
>
> > (a) The transfer or obligation was to an insider;
> >
> > (b) The debtor retained possession or control of the property transferred after the transfer;
> >
> > (c) The transfer or obligation was disclosed or concealed;
> >
> > (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> >
> > (e) The transfer was of substantially all the debtor's assets;
> >
> > (f) The debtor absconded;
> >
> > (g) The debtor removed or concealed assets;
> >
> > (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

>        (i) The debtor was insolvent or became
>   insolvent shortly after the transfer was made or
>   the obligation was incurred;
>
>        (j) The transfer occurred shortly before or
>   after a substantial debt was incurred; and
>
>        (k) The debtor transferred the essential
>   assets of the business to a lienor who
>   transferred the assets to an insider of the
>   debtor.

RSA 545-A:4, II.

I begin by noting that to state a legally valid claim for enforcement of its liens on the Nashua property, the United States must demonstrate the invalidity of not just one transfer but two: the 1995 conveyance from Sullender to Aldebaran and the 2002 conveyance from Aldebaran to Seaside.  If the United States were successful in having the court void only the 2002 conveyance, ownership of the Nashua property would revert to Aldebaran, and the government has established no basis for enforcing a lien against Aldebaran's property to satisfy Sullender's tax liability.  That said, the United States does not appear to distinguish between those two transfers.  Rather, it refers to the two transfers collectively.  As the factual basis for its attempt to void the transfers that resulted in Seaside's ownership of the Nashua property, the government relies upon the following allegations: (1) "The purported

11

transfers were made with little or no consideration, and nothing was exchanged," Am. Compl. (doc. no. 37) ¶ 15; (2) "Sullender continues to exercise dominion and control over the [Nashua p]roperty," id. ¶ 32; (3) "Sullender continues to enjoy the benefits of ownership of the [Nashua property]," id. ¶ 33; (4) "Sullender continues to retain possession of the [Nashua property]," id. ¶ 34; (5) "Sullender treats the [Nashua property] as his own," id. ¶ 35; and (6) "Sullender uses the [Nashua p]roperty as his business address, and operates his business out of that location," id. ¶ 36.  Those facts are insufficient to support a determination that the transfer from Sullender to Aldebaran is void.

As factors supporting the invalidity of the transfers, defendants have conceded that: (1) after the two transfers, Sullender retained possession or control of the Nashua property, see RSA 545-A:4, II(b); and (2) the consideration received for the property from both Aldebaran and Seaside was negligible, see RSA 545-A:4, II(h).  On the other hand, the government has alleged no facts concerning: (1) whether Aldebaran qualified as an insider, see RSA 545-A:4, II(a), or was a lienor, see RSA 545-A:4, II(k); (2) the amount of Sullender's assets represented by the Nashua property at the time he conveyed it to Aldebaran,

12

see RSA 545-A:4, II(e); (3) concealment of assets by Sullender, see RSA 545-A:4, II(g); or (4) Sullender's solvency, see RSA 545-A:4, II(i).  Finally, running in favor of the validity of the transfer from Sullender to Aldebaran, the facts alleged in the complaint establish that: (1) both conveyances of the Nashua property were disclosed rather than concealed, see RSA 545-A:4, II(c); (2) this suit against Sullender was filed more than fifteen years after he conveyed the property to Aldebaran, see RSA 545-A:4, II (d); (3) Sullender did not abscond, see RSA 545-A:4, II(f); and (4) the conveyance from Sullender to Aldebaran took place more than ten years before a federal tax lien arose on his property, and Aldebaran's conveyance to Seaside took place approximately five years before such a lien arose, see RSA 545-A:4, II(j).

   Under the circumstances of this case, the negligible consideration given for the Nashua property and Sullender's current use of that property are insufficient to overcome the fact that Sullender conveyed the property to Aldebaran, an entity about which the United States alleges no facts, seventeen years before the United States sued Sullender, twelve years before a federal tax lien against his property arose, and five years before the first year he is charged with failing to file a

tax return.  In sum, the facts alleged in the complaint do not support a legally valid claim for voiding, as fraudulent, the transfer from Sullender to Aldebaran, and if that transfer is not void, then the government cannot establish a legally valid claim for enforcing its liens on the Nashua property based upon a fraudulent-conveyance theory.

### b. The Government's Nominee/Alter-Ego Theory

The government's alter-ego theory is equally unavailing. First of all, the United States identifies no legal authority for disregarding the distinction between Sullender and Seaside. The Government states that Seaside is either "the mere nominee of Sullender, the true and equitable owner of the [Nashua p]roperty," Am. Compl. (doc. no. 37) ¶ 41, or "the alter-ego of Sullender, the true and equitable owner of the [Nashua p]roperty," id. ¶ 42.  Those, however, are legal conclusions, not facts that defendants have conceded.

The only relevant fact the United States alleges is Sullender's purported status as "the Executive Trustee of the Seaside Management Trust," Am. Compl. (doc. no. 37) ¶ 38, but the government identifies no rule of law under which a person's status as a trustee automatically makes trust assets available to satisfy the personal obligations of the trustee.  In a

similar vein, the United States alleges that Seaside "was created on, or about December 29, 1997, but was never recorded with a Registry of Deeds, and therefore is a fictitious entity," id. ¶ 40.  The United States, however, identifies no authority for the proposition that the validity of a trust hinges on recordation in a registry of deeds, and it does not explain what it means by the term "fictitious entity."  Moreover, merely calling Seaside a "fictitious entity" does nothing to advance the government's argument.  Corporations, as entities independent from their stockholders, are legally fictitious, but even so, absent special circumstances, that fiction is sufficient to protect stockholders from individual liability for corporate debts.  See Mbahaba v. Morgan, 163 N.H. 561, 568-69 (2012)).

To summarize, the Unites States has identified neither a legal theory under which it is entitled to treat Seaside's assets as Sullender's, nor any facts to justify doing so.  Accordingly, the government's alter-ego theory, as to the Nashua property, does not support a legally valid claim for enforcement of its liens on that property.

## 2. Liens on the Hollis Property

The foregoing discussion of the government's alter-ego theory applies with equal force to the Hollis property. The Government's fraudulent-conveyance theory is even more untenable with regard to the Hollis property than it is with regard to the Nashua property. Sullender was at least an owner of record in the chain of title to the Nashua property. Not so with the Hollis property; Sullender was never the owner of record. The only potentially relevant conveyance the United States mentions is the 2005 conveyance from Lisa to Seaside, but if that conveyance were to be voided pursuant to RSA 545-A:4, ownership of the Hollis property would revert to Lisa rather than Jeffrey, and the United States has identified no legal basis for placing and enforcing liens on Lisa's property to satisfy Sullender's tax liability. Thus, the United States has not stated a legally valid claim for enforcement of its liens on the Hollis property.

## Conclusion

For the reasons detailed above, I recommend that Judge Laplante grant the government's motion for default judgment, document no. 40, but only in part. Specifically, I recommend: (1) granting judgment to the United States against Sullender in

the amount of $2,379,799.81, plus statutory additions and interest; (2) awarding the government its costs; and (3) denying the government's request for enforcement of its liens on the Nashua and Hollis properties.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

                                        _____
                                        Landya McCafferty
                                        United States Magistrate Judge

October 8, 2013

cc:   Jeffrey S. Sullender, pro se
      Matthew C. Donahue, Esq.
      Andrea A. Kafka, Esq.